# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| ANNABELLE LEE, ) | |
| ) | |
| Plaintiff, ) | NO. 3:19-cv-01004 |
| ) | |
| v. ) | JUDGE CAMPBELL |
| ) | MAGISTRATE JUDGE |
| AMBER STEWART, DAVID ) | HOLMES |
| GRISWALD, SCOTT HARDING, and ) | |
| BRIAN WOLTERS, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Pending before the Court is a Report and Recommendation from the Magistrate Judge (Doc. No. 23) recommending the Court deny Plaintiff's motions to amend the complaint (Doc. Nos. 17 and 18) and grant Defendants' Motion for Judgment on the Pleadings (Doc. No. 6) and dismiss the Complaint with prejudice. By separate Order (Doc. No. 24) the Magistrate Judge denied as moot the following motions filed by Plaintiff: motion to extend the deadline to respond to Defendant's motion (Doc. No. 9); motion for e-filing privileges (Doc. No. 11); motion for a subpoena (Doc. No. 12); second motion for an extension of time to respond to Defendant's motion (Doc. No. 19); and second motion for a subpoena (Doc. No. 20). Plaintiff filed a motion for review of the non-dispositive Order (Doc. No. 25) and filed objections to the Report and Recommendation. (Doc. No. 26). Defendants' filed a response to Plaintiff's objections (Doc. No. 27) and Plaintiff filed an objection to Defendants' response (Doc. No. 28).

After a *de novo* review, and for the reasons stated herein, Plaintiff's objections to the Report and Recommendation are **OVERRULED** and the Report and Recommendation is **ADOPTED**. Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. No. 6) is

**GRANTED**. Plaintiff's Motion for Review of the Magistrate Judge's non-dispositive Order (Doc. No. 24) is **DENIED** and the Order is **AFFIRMED**.

## I. BACKGROUND

Plaintiff Annabelle Lee, proceeding *pro se*, was employed by DAL Global Services / United Airlines ("DGS") as a "PAX Ramp Agent" at the Nashville International Airport. As a condition of employment, she was required to have a Security Identification Display Area ("SIDA") badge issued by the Metropolitan Nashville Airport Authorty ("MNAA"). The SIDA badge allows unescorted access to restricted areas of the airport. On April 2, 2018, MNAA revoked Plaintiff's SIDA badge "based on an investigation conducted by the Department of Public Safety's Criminal Investigations Division (Reference report number 2018-01144)." (Doc. No. 1-9 at 1). DGS then terminated Plaintiff's employment because her SIDA badge was revoked. (*Id*. at 2).

The Department of Public Safety began the investigation after receiving reports that DGS employees were talking about "knowing how to make bombs and that everyone should be allowed to carry a AK-47." (Doc. No. 1-9 at 10). The reported comments, which made their way to TSA employees through the grapevine, were based in part on statements Plaintiff made during a United Airlines/TSA training course. (*See* Doc. No. 1-8 at 4 and 6). The training course was on the topic of aircraft searches and included information about various explosive devices and their component parts. (*Id*. at 4). During the class Plaintiff stated, "That looks easy to build," and when asked by the course instructor if she knew how to build a bomb, Plaintiff said she "probably could" and mentioned her training in electronics and pyrotechnics for entertainment. (*Id*. at 4-5).

2

Case 3:19-cv-01004  Document 33  Filed 07/28/20  Page 2 of 12 PageID #: 601

During the investigation into was categorized a "suspicious person(s)" report, MNAA investigators interviewed various individuals, including the course instructor, Edgardo Pina Fernandez, and Plaintiff. (*Id*. at 10-21). Edgardo Pina Fernandez recounted the statements Plaintiff made during the class.[1] (*Id*. at 14). According to the report, Plaintiff told the investigator she "was trained to build explosive devices" and recounted her experience with pyrotechnics. (*Id*. at 14). The investigator reported that he "asked Lee if she understood why there was concern with her statement" and she replied, "'I do know how to make explosive devices and I'm not going to lie about it.'" (*Id*.)

Plaintiff disputes the accuracy of the statements attributed to her, claiming that she never said she know how to build a bomb, only that she "probably could," and that she never used the word "bomb." Plaintiff contends her comments were appropriate within the context of the training class and that there was no legitimate reason to revoke her SIDA badge. She further alleges that Airport Security Manager Amber Stewart and the MNAA legal office did not respond to her requests for information about the badge revocation, appeal of the decision, and reinstatement of her badge.[2] (Doc. No. 1-8 at 2).

Plaintiff alleges violations of her rights as a citizen of the United States of America, the State of Tennessee, Davidson County, and Nashville. (*Id*. at 1). She specifically claims that her speech in the training class was protected by the First Amendment and the Tennessee Student

---

[1] Pena Fernandez recounted that Plaintiff said, "I know how to build bombs." (*Id*. at 14). Plaintiff says the quote is inaccurate because she never used the word "bomb," but said "I probably could," after being asked if she could build a bomb. (Doc. No. 28 at 14).

[2] The Complaint also includes information about an incident that occurred on April 4, 2018, when Plaintiff was arrested after going to the MNAA legal office in an attempt to obtain the investigative report and SIDA badge policies. (Doc. No. 1-8). Plaintiff is pursuing claims based upon these events in a separate case pending in this court. *Lee v. MNAA, et al.* 3:19-cv-00999 (M.D. Tenn., filed Nov. 8. 2019).

3

Free Expression Act, and that the class instructor, Edgardo Pena Fernandez, violated the Family Education Right to Privacy Act, 20 U.S.C. § 1232g, 34 C.F.R. Part 99.  Plaintiff also lists several federal and state criminal statutes: 49 U.S.C. § 46502 (aircraft piracy); 49 U.S.C. § 46504 (interference with flight crew members and attendants); 18 U.S.C. § 37 (violence at international airports); conspiracy to commit criminal acts, 18 U.S.C. § 2384 (seditious conspiracy); Tenn. Code Ann. § 39-16-503 (destruction, fabrication, or tampering with evidence); Tenn. Code Ann. § 39-16-502 (false reporting); Tenn. Code Ann. § 39-16-702 (perjury); Tenn. Code Ann. § 39-16-403 (official oppression); Tenn. Code Ann. § 39-12-103 (criminal conspiracy); Tenn. Code Ann. § 39-17-309 (civil rights intimidation).

Defendants filed a motion for judgment on the pleadings. (Doc. No. 6).  The Magistrate Judge recommended judgment be granted in favor of Defendants for the following reasons:  (1) there is no private right to enforce the cited criminal statutes; (2) there is no private right to enforce FERPA; (3) the Campus Free Speech Protection Act, Tenn. Code Ann. § 49-7-2401 (referred to by Plaintiff as the Tennessee Student Free Expression Act) applies only to Tennessee public institutions of higher education and not to statements made in a corporate training class; and (4) Plaintiff's statement that she "could probably" make a bomb was not protected speech under the First Amendment. (Doc. No. 23).  The Magistrate Judge also recommended the Court deny Plaintiff's motions to amend the complaint (Doc. No. 17 and 18). The Magistrate Judge noted that Plaintiff stated she would file an amended complaint by February 28, 2019, but did not do so, and that Plaintiff did not set forth facts and theories that would support viable claims under the Second or Fifth Amendment. (Doc. No. 23 at 5 and 10).

In light of the recommendation that the case be dismissed, by separate Order the Magistrate Judge denied as moot several non-dispositive motions filed by Plaintiff. (Doc. No. 25). The motions were denied without prejudice to refiling if the case is not dismissed. (*Id*.)

Plaintiff filed a motion for review of the case in which she seeks review of all of the orders of the Magistrate Judge. (Doc. Nos. 25 and 26).

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1) and Local Rule 72.03(b)(3), a district court reviews *de novo* any portion of a report and recommendation to which a specific objection is made. *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). General or conclusory objections are insufficient. *See Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009). Thus, "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Id.* (quoting *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). In conducting the review, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Under Rule 72(a) of the Federal Rules of Civil Procedure, the Court may reverse or modify a non-dispositive pretrial order of the Magistrate Judge if it is clearly erroneous, contrary to law, or in the interests of justice. *See also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter … where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). A ruling is clearly erroneous if, upon review of the record, the district court is left with a definite and firm conviction that a mistake has been made. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000).

5

### III.  ANALYSIS

**A.  Motion for Judgment on the Pleadings**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014).  "In reviewing a motion for judgment on the pleadings, we construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Id*. (internal quotation marks and citations omitted).  "The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claims plausible, i.e., more than merely possible." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

In ruling on a motion under Rule 12(c), the Court may look only at the "pleadings." *Doe v. Belmont Univ*., 334 F. Supp. 3d 877, 887 (M.D. Tenn. 2018).  The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of any written instrument which is an exhibit to a pleading and is a part thereof for all purposes."  Fed. R. Civ. P. 10(c).  "[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc*., 108 F.3d 1546, 1554 (6th Cir. 1997)).

6

1. FERPA and the Campus Free Speech Protection Act

Plaintiff's objections to the recommendation to grant judgment on her FERPA and Campus Free Speech Protection Act claims do not address the Magistrate Judge's rulings that FERPA does not confer a private right of action. With regard to the applicability of the Campus Free Speech Protection Act, Plaintiff states that she has worked with other airlines and received training in a formal educational institutional environment and that she "feel[s] all the training should be protected." (Doc. No. 26 at 8). She continues, "I did not see any language in the law that would exclude the corporate training in a formal educational environment." (*Id.*)

Plaintiff's objections are without merit. FERPA does not have a private right of action. *Bevington v. Ohio Univ.*, 93 Fed App'x 748, 750 (6th Cir. 2004). The Tennessee Campus Free Speech Protection Act applies to "public institutions of higher education" in Tennessee. Tenn. Code Ann. § 49-7-2403. Plaintiff provides no support for her assertion that the Act covers corporate training. The Magistrate Judge correctly concluded that Plaintiff does not state viable claims under FERPA or the Tennessee Campus Free Expression Act, and these claims should, therefore, be dismissed.

2. First Amendment Claim

Plaintiff claims the statements she made in the training class – that she has experience and training in pyrotechnics and "probably could" build a bomb because "you just showed us how to build one" – are protected speech. Plaintiff contends that it was a violation of her First Amendment rights to base the investigation and resulting revocation of her SIDA badge on anything she said because "the Constitution does not allow any regulation of speech." (Doc. No. 26 at 17).

The Magistrate Judge found that Plaintiff did not state a plausible claim that her First Amendment right to free speech was violated. Applying the framework for a first amendment free speech claim brought by a public employee, the Magistrate Judge found that Plaintiff's comments in the training class were made in her capacity as an employee, not as a private citizen, and that Plaintiff's comments were not a matter of public concern. (Doc. No. 24 at 9). Plaintiff argues that she worked for DGS, a private employer, and objected to the application of the framework for a public employee. She also claims that her statements should be characterized as pertaining to aircraft safety and are, in that context, a matter of public concern. (Doc. No. 29 at 16-17).

Plaintiff's allegation that MNAA improperly investigated her and revoked her SIDA badge based on the content of her speech (i.e. what she said during the training class) is best viewed as a claim for First Amendment retaliation. To adequately plead a First Amendment retaliation claim, a plaintiff must allege: (1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the protected activity was the but-for cause of the adverse action. *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 767 (6th Cir. 2010). "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citations and internal quotations omitted). "If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim. *Id.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593 (1998)). "To prevail on such a claim, a plaintiff must establish a 'causal connection' between

the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury'." *Id*. (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured – the motive must cause the injury. Specifically, it must be the 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id*.

The Court need not determine whether the public employee framework is the correct framework in this case because the facts alleged do not give rise to a plausible claim that the investigation and subsequent revocation of Plaintiff's SIDA badge was motivated by retaliation based on protected speech. Plaintiff has not identified any case law, nor is the Court aware of any, to suggest that her statements that she "probably could" build a bomb and that she has experience and training in pyrotechnics is protected speech. Even if Plaintiff's comments regarding her probable bomb-making ability do qualify as protected speech, which would be a stretch in light of the security considerations at airports, Plaintiff has not alleged facts to support a plausible claim that Defendants initiated the investigation or revoked her SIDA clearance in retaliation for her statements.

Plaintiff appears to argue that an investigation triggered by something someone says is always unconstitutional. This contention is patently false. Indeed, the Supreme Court has noted that "protected speech is often a 'wholly legitimate consideration'" for law enforcement officers. *Nieves*, 139 S. Ct. at 1724; *see also, Riechle v. Howards*, 566 U.S. 658, 668 ("an officer may decide to arrest the subject because his speech provides evidence of a crime or suggests a potential threat"); *Wayte v. United States*, 470 U.S. 598, 612-613 (noting that letters of protest written to the Selective Service "provided evidence of the nonregistrant's intent not to comply"). Similarly, here, the statements about bombs and guns may be relevant evidence

9

that certain persons pose a security risk. The First Amendment does not forbid consideration of speech in this context.

**B. Motion to Amend**

The Federal Rules of Civil Procedure allow a party to amend a pleading once as a matter of course within 21 days of filing, or if the pleading is one to which a responsive pleading is required, within 21 days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Beyond this time, a party may amend the pleadings only with written consent of the opposing party or leave of court. Fed. R. Civ. P. 15(a)(2). Leave to amend a complaint should be freely permitted "when justice so requires." *Id.* However, leave to amend is properly denied if the proposed amendments would be futile and would not withstand a Rule 12(b)(6) motion to dismiss. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006).

Although Plaintiff did not file a proposed amended complaint, after the Magistrate Judge issued the Report and Recommendation, Plaintiff has filed more than 50 single-spaced pages explaining the legal basis for her existing and proposed claims. (*See* Doc. Nos. 25, 26, 28). Plaintiff contends "the MNAA police report [] has reported Constitutional 1st, 2nd, and 5th Amendment incidents as crimes and suspicious activity." (Doc. No. 28 at 9; see also *id.* at 13 and 20). She claims the First and Second Amendments were violated when "David Christian reported to the TSA and then the Police were investigating the crazing people talking about weapons, bombs, and the right to carry an AK-47" because the Second Amendment "give us the right to own and bear arms" and the First Amendment "give us the right to talk about the [Second Amendment] right to own and [bear] arms." (Doc. No. 28 at 21). Plaintiff alleges her Fifth Amendment right to remain silent was violated "when Wolters reported that Plaintiff

10

would not respond to technical questions about building a bomb." (*Id*.)  In addition, Plaintiff claims her Fifth Amendment rights were violated by the State of Tennessee when the case was removed to federal court. (Doc. No. 26 at 13).

The Magistrate Judge recommended the Court deny Plaintiff's motion to amend the complaint (Doc. No. 17) and motion for extension of time to amend the complaint (Doc. No. 18) because Plaintiff as had ample time and opportunity to include all of the claims she seeks to raise in this case and amendment to assert new claims for violation of Second and Fifth Amendments would be futile. (*Id*. at 10).  The Magistrate Judge also noted that Plaintiff stated she would file an amended complaint by February 28, 2019,[3] but had not done so. (Doc. No. 23 at 5).

The Court agrees with the Magistrate Judge that Plaintiff does not propose viable claims for violation of the Second or Fifth Amendment and that amendment to add these claims would be futile.  As stated above, what someone says or does not say can be relevant evidence of a crime or security risk and inclusion of this information in a police report does not violate the Second or Fifth Amendments to the United States Constitution. *See supra*, *Riechle*, 566 U.S. at 668.

Because amendment to add these claims would be futile, the Court agrees that Plaintiff's motion for leave to amend should be DENIED.

---

[3] The Court notes that the date, which was correctly transcribed from Plaintiff's motion, is likely a typo. Plaintiff filed the motion seeking an extension of time to amend the complaint on January 22, 2020 (Doc. No. 18), and presumably intended to state that she would file an amended complaint by February 28, 2020.  Plaintiff also stated on February 21, 2020, that she would file an amended claim with "new discoveries of constitutional issues" within seven days. (Doc. No. 22).

11

### C. Non-Dispositive Rulings

In light of her recommendation that the case be dismissed, the Magistrate Judge dismissed various non-dispositive motions without prejudice to refiling in the event the case is not dismissed. (Doc. No. 24). This ruling was neither clearly erroneous nor contrary to law. Accordingly, the Court will AFFIRM the Order of the Magistrate Judge denying without prejudice the following motions: Plaintiff's motions for extension of time (Doc. Nos. 9 and 19); Plaintiff's motion for e-filing privileges (Doc. No. 11); and Plaintiff's motions for a subpoena (Doc. No. 12 and 20).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Objections to the Report and Recommendation are **OVERRULED** and the Report and Recommendation (Doc. No. 23) is **ADOPTED**. Accordingly, Defendant's Motion for Judgment on the Pleadings (Doc. No. 6) is **GRANTED**, and Plaintiff's motions to amend her complaint (Doc. Nos. 17 and 18) are **DENIED**. The Magistrate Judge's denial of Plaintiff's non-dispositive motions (Doc. No. 24) is **AFFIRMED**.

This action is **DISMISSED** with prejudice. This Order shall constitute the final judgment in this case pursuant to Fed. R. Civ. P. 58. The Clerk is directed to close the file.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE